873 F.2d 1439
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
JENSON FINANCIAL CORPORATION, Plaintiff-Appellant,
v.
CLINTON JOINT VENTURE; Clinton Limited Partnership,
Defendants-Appellees.
 No. 88-1315.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 9, 1989.
Decided: April 10, 1989.
 
 John Edwards Harrison (Jack L. Wuerker, Adam D. Elfenbein, Light & Harrison, P.C., on brief), for appellant.
 Mark Peyser Friedlander, Jr. (Friedlander & Friedlander, P.C., on brief), for appellees.
 Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and ALEXANDER HARVEY, II, Chief United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Clinton Joint Venture, a general partnership formed to acquire and develop land in Prince George's County, Maryland, had as its principal participants Clinton Limited Partnership ("Clinton") and Jenson Financial Corporation ("Jenson"). Jenson was a corporation established by Julian Seidel[1] under which his wife and children were the sole stockholders but he retained all the voting rights in a Voting Trust. Neither Seidel's wife nor his children participated in the conduct of the business of Jenson. That business consisted exclusively of the securing of financing, an activity which only Seidel pursued. Jenson had no physical assets.
 
 
 2
 Clinton and Jenson entered an agreement under the terms of which Jenson was to provide acquisition, development, and permanent financing for the Joint Venture. Eventually, Jenson, acting through Seidel, failed to secure as promised development and permanent financing for certain Joint Venture real estate.
 
 
 3
 Clinton contended that the interest of Seidel or Jenson in the Joint Venture ended upon their failure to follow through on the undertakings to secure financing. Jenson entered into bankruptcy and then instituted the present action, claiming that it was entitled to a share of the proceeds of the subsequent sale of the subject land by Clinton and that certain individual Clinton partners acted erroneously a) in declaring Jenson in default and b) in having alleged a failure to fulfill Jenson's obligation to secure financing.
 
 
 4
 Seidel was deposed by the defendants. He asserted the protections of the Fifth Amendment to the Federal Constitution, electing not to answer questions on 69 separate occasions.
 
 
 5
 A motion followed for dismissal of the complaint or to bar Seidel's testimony or, in the alternative, to compel answers by Seidel to deposition questions. The district court entered an order compelling Seidel to answer deposition questions relating to his ability to secure financing. At the reconvened deposition on May 23, 1988, Seidel again took the Fifth Amendment as to numerous questions. Clinton moved for sanctions due to Seidel's failure to comply with the discovery order.
 
 
 6
 Seidel sought to justify his action (or perhaps more accurately inaction) on the grounds that Jenson, not he, was the party in the case, that the answers were irrelevant, that his answering the questions would result in the invasion of his Fifth Amendment privilege, and that there was lack of prejudice on the part of Clinton. The district court rejected his contentions and, on ascertaining that Seidel's position of refusing to answer on Fifth Amendment grounds was fixed, dismissed the case without prejudice.
 
 
 7
 All parties acknowledged at the oral argument of the ensuing appeal that, had Seidel himself been the party rather than Jenson, the order of the district court would have been proper. Considering that the case, having been dismissed without prejudice, could be reinstituted at any time, that no statute of limitations problem presently existed, and appreciating the close interlinkage between Seidel and Jenson, we are satisfied that no abuse by the district court of its wide discretion in the matter occurred. The district court is, accordingly,
 
 
 8
 AFFIRMED.
 
 
 
 [1]
 Seidel was formerly the President, Chief Executive Officer, and Chairman of the Board of First Maryland Savings & Loan Association, and faces criminal prosecution for his alleged malfeasance in those offices. A civil lawsuit arising out of Seidel's First Maryland activities resulted in a judgment against him for $165,000,000